UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN DENNIS AHERN, III,

               Plaintiff,

vs.                                       Case No.: 8:06-CV-2068-T-27MSS

PACIFIC GULF MARINE, INC., et al.,

               Defendants.
_____/

PACIFIC GULF MARINE, INC., et al.,

               Third-Party Plaintiffs,

vs.

NORSAFE AS, et al.

               Third-Party Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Third-Party Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) (Dkt. 34), Third-Party Plaintiffs' response in opposition (Dkt. 64), and Third-Party Defendant's reply to the response in opposition (Dkt. 70), which was filed with leave of Court.[1] Upon consideration, the motion to dismiss is GRANTED.

### *Background*

This admiralty case was commenced by Plaintiff John Dennis Ahern, III ("Ahern"), a seaman, for injuries suffered in November 2003 while he was participating in a drill involving the lowering

---

[1] On September 13, 2007, this Court granted the Third-Party Plaintiffs' motion to conduct jurisdictional discovery, allowed Third-Party Plaintiffs until November 15, 2007 to respond to the motion to dismiss, and granted Third-Party Defendant leave to file a reply. (Dkt. 42).

of a fast rescue boat ("rescue boat") on the M/V Liberty ("Liberty").   (Dkt. 1, ¶ 10).   As he was being lowered in the rescue boat, Ahern alleges that a "remote control wire parted causing a heavy, metal handle attached to the wire to fall approximately 60 feet" striking him in the head. (Dkt. 1, ¶ 11).   Ahern sued Pacific Gulf Marine, Inc. ("PGM"), his employer and vessel manager of the Liberty, and  American Roll-on-Roll-off Carrier, LLC ("ARC"), the time charterer of the Liberty. (Dkt. 1, ¶¶ 7-9; Eisele Aff. ¶¶ 3-4).   On February 12, 2008, this Court granted the parties' joint motion to add American International Car Carrier, Inc. ("AICC") as a Defendant/Third-Party Plaintiff. (Dkt. 87). AICC was the demise charterer of the Liberty. (Eisele Aff. ¶ 4).   Because the parties have agreed to attribute ARC's past filings to AICC, the Court refers to "ARC/AICC" in the instant Order.

PGM and ARC/AICC  (collectively, "Plaintiffs") initiated a third-party action against Norsafe AS ("Norsafe") and its sales agent, Scan Pacific Marine, LLC  ("Scan Pacific"), alleging design defect, breach of warranty, failure to warn, and negligence. On November 7, 2007, Plaintiffs voluntarily dismissed their third-party claims against Scan Pacific. (Dkts. 57, 58).   Norsafe, the remaining Third-Party Defendant, manufactured the rescue boat and related machinery. (Dkt. 16, ¶ 14).  In 2001, Norsafe sold the rescue boat to American V. Ships Marine, Ltd., LLC ("V. Ships"), which took delivery of the rescue boat in Bremerhaven, Germany.  (Songedal Dec., ¶¶ 17-22).  V. Ships was the vessel manager of the Liberty until September 2001, when PGM was appointed vessel manager. (Eisele Aff. ¶ 3).  V. Ships is not a party to this action.

Norsafe is a foreign corporation, with its principal place of business in Norway. (Dkt. 16, ¶ 8).  Norsafe is not alleged to have entered Florida in connection with the sale or maintenance of rescue boat.  As discussed in detail below, Norsafe also alleges that it possesses only limited contacts

with the forum state, Florida, and is therefore not subject to personal jurisdiction pursuant to Florida's long-arm statute. This Court agrees and finds that the Third-Party Complaint is due to be dismissed.

### *Standard*

A federal district court employs a two-part analysis to determine whether it has personal jurisdiction over a nonresident defendant. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the Court determines whether the exercise of jurisdiction over Norsafe is appropriate under a federal statute or Florida's long-arm statute. *Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996). If a statute authorizes jurisdiction, the Court must also examine whether exercising jurisdiction over Norsafe comports with due process, "which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Id.*

Plaintiffs bear the burden of establishing a prima facie case of personal jurisdiction over Norsafe, sufficient to withstand a motion for directed verdict. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Sculptchair, Inc.*, 94 F.3d at 627. The facts alleged in the third-party complaint are accepted as true, to the extent that they are not controverted by Norsafe. *Id.* If, as here, Norsafe disputes the allegations in the third-party complaint with supporting affidavits, then the burden shifts back to Plaintiffs to counter with affidavits or "other competent proof" to support the jurisdictional allegations. *Meir ex rel. Meir v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Where the evidence conflicts, all reasonable inferences must be construed in favor of Plaintiffs. *Stubbs*, 447 F.3d at 1360.

*Discussion*

As to the first prong of the jurisdictional inquiry, Plaintiffs contend that Norsafe is subject to personal jurisdiction pursuant to: (1) the general jurisdiction provision of the Florida long-arm statute, Fla. Stat. § 48.193(2); (2) the specific jurisdiction provision of the Florida long-arm statute governing breach of contract actions, Fla. Stat. § 48.193(1)(g); (3) and what Plaintiffs contend is a wavier of objection to personal jurisdiction, or, alternatively, a forum selection clause, in the "Operation and Maintenance Manual" provided by Norsafe to V. Ships in connection with the sale of the rescue boat in 2001. As set forth below, Plaintiff has failed to demonstrate that personal jurisdiction is authorized by any provision in Florida long-arm statute.

## 1.     *General jurisdiction, Fla. Stat. § 48.193(2)*

Plaintiffs first invoke the general jurisdiction section of the Florida long-arm statute, which provides:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity. Fla. Stat. § 48.193(2).

The "substantial and not isolated activity" requirement for general jurisdiction under the Florida long-arm statute is the functional equivalent of the "continuous and systematic contact" requirement under the Due Process Clause. *Meier*, 288 F.3d at 1269 n.6; *see also Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1127-28 (Fla. 1st DCA 1994). For instance, a nonresident corporation with "many activities and facilities" in the state would be subject to general jurisdiction, *deMco Techs., Inc. v. C.S. Eng'red Castings, Inc.*, 769 So. 2d 1128, 1131 (Fla. 3d DCA 2000), as well as a nonresident corporation selling a considerable portion of its product to Florida customers and utilizing Florida companies and facilities to do so. *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d

4

617, 620-21 (Fla. 4th DCA 1999) (exercising general jurisdiction where company sold 18% of its product to Florida importers, purchased equipment and supplies from Florida suppliers, and utilized storage facilities in Florida). On the other hand, a nonresident corporation that has only sporadic and isolated contact with Florida is not subject to general jurisdiction. *Morley v. Lady Allison, Inc.*, 633 So. 2d 1173, 1175 (Fla. 3d DCA 1994).

Norsafe argues that its contacts with Florida are very limited and are more appropriately classifed as sporadic and isolated rather than substantial and continuous. Specifically, Dag Songedal, the Vice President of Norsafe, declares that neither Norsafe nor its United States subsidiary, Norsafe Marine & Offshore Services, LLC, located in Louisiana ("Norsafe Louisiana"), have offices, employees, agents, telephone listings, bank accounts, property, or facilities that are utilized in Florida. (Songedal Dec., ¶¶ 4, 9). Norsafe contends that Norsafe and Norsafe Louisiana have not initiated contact with any Florida purchasers, have not directed advertising into the state, have not commenced legal actions in the United States, and are not registered with the Florida Secretary of State. (Songedal Dec., ¶¶ 4, 6, 9, 11-12).

Although Norsafe has sold its products to Florida-based customers, Norsafe contends that these sales constitute a small portion of its overall business activities. Between January 1, 2003 and July 31, 2007, Norsafe sold new products to two buyers and spare parts to five buyers located in Florida, totaling $1,050,000.00, which was approximately 0.5% of Norsafe's $207 million sales in that period. (Songedal Dec., ¶ 5). During this same period, Norsafe Louisiana derived $30,704.05 in revenues from parts sold to and service provided to persons in Florida, amounting to approximately 1.57% of its total revenues for the same period. (Songedal Dec., ¶¶ 7e, 10). Norsafe Louisiana also made approximately seven service calls to locations in Florida. (Songedal Dec., ¶

5

10).  Songedal declares, however, that in each of these cases, the customer, not Norsafe, initiated

contact.  (Songedal Dec., ¶¶ 6, 11).

        Based on the foregoing, Norsafe has demonstrated that its activity in Florida over the course

of four years has been limited to only a few customers, all of whom initiated contact with Norsafe.

There is no evidence that Norsafe directly solicited business in Florida.  *Cf. Sea Lift, Inc. v.*

*Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 994 (11th Cir. 1986) (noting that *direct*

solicitation of business in the forum may constitute purposeful availment in certain cases).

Moreover, the sales were isolated and constituted a very small portion of Norsafe's revenues for the

relevant period, amounting to only .5% of Norsafe's total revenues and 1.57% of Norsafe

Louisiana's total revenues.  Pursuant to Florida case law, these sporadic transactions are not

sufficient to demonstrate continuous and substantial activity in Florida, in the absence of other

activity in the state. *See Milberg Factors, Inc. v. Greenbaum*, 585 So. 2d 1089, 1091 (Fla. 3d DCA

1991) (finding insufficient activity where sales to five Florida customers generated less than 2% of

defendant's revenues); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162,

1167 (11th Cir. 2005) (finding activity was insufficient under more lenient standard pursuant to Fla.

Stat. § 48.193(1)(a) where defendant had six Florida clients, which accounted for less than 5% of

its revenue).[2]

        In response to the motion to dismiss, Plaintiffs do not dispute the minimal amount of

Norsafe's sales to Florida customers or the absence of other activities that would traditionally

---

[2] *See also Price v. Point Marine, Inc.*, 610 So. 2d 1339, 1341 (Fla. 1st DCA 1992) (finding no general jurisdiction where defendant solicited business in Florida on 13 occasions by sending letters to prospective clients, none of which were accepted, and defendant's vessels were moored in the state for a period of time on three occasions); *see also Ranger Nationwide, Inc. v. Cook*, 519 So. 2d 1087, 1089 (Fla. 3d DCA 1988) (finding only sporadic contact where defendant trucking company made "several isolated trips into Florida" during the course of its nationwide business and defendant truck brokering company derived less than 1% of its gross revenues from Florida business).

support the exercise of general jurisdiction.[3]  Plaintiffs' only specific contention is that Norsafe purchased advertising through a Florida company, Faircount, LLC, and made the payment to a Florida bank. (Norralde Aff., Exh. B).  That invoice reflects that Norsafe purchased a one-third page advertisement within the "United States Coast Guard - A Guide to the U.S. Coast Guard 2004 Edition," a national and international publication, for $3,000.00 on January 6, 2004. (Norralde Aff., Exh. B; Sec. Songedal Dec. ¶ 3).  Even if the advertisement was viewed in Florida, one advertisement in a publication with national circulation is not a significant contact for jurisdictional purposes. *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 187 (5th Cir. 1978); *Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*, 139 F. App'x 140, 143 (11th Cir. 2005) (noting that "[o]therwise, a business that advertised in a national magazine would be subject to jurisdiction in virtually every state"); *cf. Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc.*, 726 So. 2d 313, 314 (Fla. 4th DCA 1998) (personal jurisdiction established in part where defendant contracted with 48 Florida cable channels to run infomercials and took phone orders from more than 5,000 Florida customers).

Under these facts, Norsafe has demonstrated the absence of the requisite substantial, continuous, and systematic contacts required to confer general jurisdiction.  As Plaintiffs have not successfully rebutted Norsafe's evidence, Plaintiffs have failed to establish a basis for general jurisdiction pursuant to § 48.193(2) of the Florida long-arm statute.

2.    *Specific jurisdiction, Fla. Stat. § 48.193(1)(g)*

In the alternative, Plaintiffs invoke a specific jurisdiction provision of the Florida long-arm

---

[3] Plaintiffs provide a chart of Norsafe's sales for 2005 to 2007, which reflects sales to six Florida customers, but provide no further explanation of the significance of this information. (Dkt. 65 at 9-10).  Plaintiffs also provide no legal analysis regarding Norsafe's susceptibility to general jurisdiction, apart from bare recitation of personal jurisdiction standards.

statute, which provides:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> . . . .
>
> (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state. Fla. Stat. § 48.193(1)(g).

In contrast to general jurisdiction, the specific jurisdiction provisions of the Florida long-arm statute may be invoked only when there is a "causal connection between the defendant's activities in the forum state and the plaintiff's cause of action." *deMco Techs., Inc.*, 769 So. 2d at 1131. Thus, to provide a basis for jurisdiction under § 48.193(1)(g), "the contract itself must require performance in Florida." *Travel Opportunities of Fort Lauderdale, Inc.*, 726 So. 2d at 314.

In order to demonstrate the requisite "contract," Plaintiffs point to Norsafe's "Operation and Maintenance Manual," a copy of which Norsafe provided to V. Ships in connection with the sale of the rescue boat in August 2001. (Songedal Dec. ¶ 23). Plaintiffs contend that Norsafe breached a clause in the Manual, which warranted: "The Supplier and the Purchaser shall be mutually obliged to let themselves be summoned to the court or arbitral tribunal examining claims for damages lodged against one of them on the basis of damage allegedly caused by the Product."[4] (Songedal Dec., Exh. E at 50). Plaintiffs argue that this language constitutes a waiver of Norsafe's objection to personal jurisdiction, or, alternatively, a valid forum selection clause. In turn, Plaintiffs contend that Norsafe violated this provision by disputing its amenability to personal jurisdiction in Florida, thus

---

[4] Norsafe is described as the "Supplier." (Songedal Dec., Exh. E at 6). The "Purchaser" does not appear to be defined in the Manual, but Norsafe contends that V. Ships is clearly the purchaser, as demonstrated by the purchase order and sales confirmation (*Id.*, Exhs. C, D). There is no allegation that Plaintiffs were parties to the agreement, which Norsafe argues justifies another basis for rejecting Plaintiffs' reliance on § 48.193(1)(g). Because Plaintiffs' argument fails for more fundamental reasons, however, the Court does not reach the issue of whether Plaintiffs have standing to enforce the agreement, at this juncture.

"[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state" sufficient to confer jurisdiction under § 48.193(1)(g).

Plaintiffs' argument is without merit. It is undisputed that the performance required in the contract between Norsafe and V. Ships, the delivery of the rescue boat, occurred in Germany. The Manual does not mandate that any act occur in Florida. *See Classic Lines, Inc. v. Nat'l Coach Corp.*, 734 F. Supp. 471, 473 (S.D. Fla. 1990) (finding no specific jurisdiction pursuant to § 48.193(1)(g) where contract did not specify that any act was to occur in Florida). More significantly, § 48.193(1)(g) requires that the action for which Plaintiffs seek to obtain jurisdiction "arise from" the alleged contractual breach. The instant action does not "arise from" Norsafe's alleged noncompliance with the contractual language. Rather, it arises from Ahern's injuries and Norsafe's manufacture of the rescue boat.

The provisions of the Florida long-arm statute are strictly construed. *Sculptchair, Inc.*, 94 F.3d at 627. Plaintiffs have provided no authority supporting the exercise of jurisdiction pursuant to Fla. Stat. § 48.193(1)(g) under these circumstances. Accordingly, Plaintiffs have failed to demonstrate that the Florida long-arm statute confers specific jurisdiction over Norsafe pursuant to § 48.193(1)(g).

## 3. *Effect of the forum selection clause*

In the alternative, Plaintiffs allege that Norsafe consented to personal jurisdiction in Florida by virtue of the same language, which they contend is a waiver of Norsafe's objection to personal jurisdiction, or, alternatively, a valid forum selection clause. This argument is likewise without merit.

Because "the extent of the long-arm statute is governed by Florida law, federal courts are

required to construe it as would the Florida Supreme Court." *Sculptchair, Inc.*, 94 F.3d at 626-27 (internal quotations omitted). The Florida Supreme Court has unequivocally held that a forum selection clause is insufficient to confer personal jurisdiction over a non-resident defendant under the long-arm statute, absent an independent basis for jurisdiction under the Florida long-arm statute. *McRae v. JD./MD., Inc.*, 511 So. 2d 540, 542-43 (Fla. 1987). This position is dictated by the long-arm statute itself, as "consent" is not one of the enumerated bases for the exercise of personal jurisdiction. *Id.* Because Plaintiffs have failed to demonstrate an independent basis for personal jurisdiction under the long-arm statute, Plaintiffs may not rely on the forum selection clause as the sole basis for personal jurisdiction. *Id.*; *Kennedy v. Reed*, 533 So. 2d 1200, 1201-02 (Fla. 2d DCA 1988); *cf. Hatfield v. AutoNation, Inc.*, 915 So. 2d 1236, 1243 (Fla. 4th DCA 2005) (noting that forum selection clause can be considered where "other grounds exist to exercise such jurisdiction").

Plaintiffs seek to avoid this result by looking to cases decided pursuant to federal law, which have consistently held that forum selection clauses are enforceable. *See e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588-89 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 4 (1972). These cases are inapposite, however, as they involve the enforcement of a mandatory forum selection clause. *See id.* In this case, by contrast, Plaintiffs seek to create personal jurisdiction exclusively on the basis of a forum selection clause that does not even identify Florida as the agreed forum.

It is well-established that Plaintiffs must demonstrate a statutory basis for personal jurisdiction. *Omni Capital Int'l., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104-08 (1987); *Cable/Home Commc'ns Corp.*, 902 F.2d at 855-56; *Johns v. Taramita*, 132 F. Supp. 2d 1021, 1027 n.8, 1028 (S.D. Fla. 2001); *Baker v. Carnival Corp.*, No. 06-21527, 2006 WL 3360418, at *6 (S.D.

Fla. Nov. 20, 2006). Because Plaintiffs have alleged no federal statute governing service of process, Florida's long-arm statute controls, as interpreted by the Florida Supreme Court, even in this federal question case. *Omni Capital Int'l., Ltd.*, 484 U.S. at 104-08; *see e.g., Assoc. Trans. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1072 (11th Cir. 1999) (evaluating Florida's long-arm statute in admiralty case); *Johns*,132 F. Supp. 2d at 1028. As discussed, the Florida Supreme Court has declared that the long-arm statute does not confer jurisdiction based solely on a forum selection clause.

While "consent" may suffice to demonstrate that the exercise of jurisdiction is constitutionally permissible under the Due Process Clause,[5] Plaintiffs must still invoke a federal statute or state long-arm statute making the non-resident defendant amenable to service of process and personal jurisdiction. *Omni Capital Int'l., Ltd.*, 484 U.S. at 104-08. Plaintiffs have cited no controlling authority in which a court has relied solely on a forum selection clause, by itself, to establish personal jurisdiction, *absent a provision in the forum state's long-arm statute* authorizing this exercise of jurisdiction. *See Johns*, 132 F. Supp. 2d at 1027-28 (noting that unlike Florida, many states' long-arm statutes allow personal jurisdiction based on a forum selection clause, standing alone). Because the Florida long-arm statute does not include consent among its enumerated bases for personal jurisdiction, the forum selection clause, standing alone, does not provide a basis for personal jurisdiction over Norsafe.

To the extent that the Supreme Court's opinion in *M/S Bremen* sets forth a federal common law principle governing personal jurisdiction in admiralty cases that renders an authorizing statute

---

[5] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) (enforcement of forum selection provisions "does not offend due process.")

11

unnecessary,[6] Plaintiffs' argument nevertheless fails. First, the contract does not manifest consent to jurisdiction in a particular, designated, or exclusive forum, let alone in the federal courts of Florida. *See Burger King Corp.*, 471 U.S. at 473 n.14.; *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) ("A permissive clause authorizes jurisdiction in a *designated forum* but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an *exclusive forum* for litigation under the contract.'") (emphasis added).  Second, the clause does not expressly waive Norsafe's (or V. Ships') right to challenge personal jurisdiction. Rather, the clause obligates both parties to "be summoned" to any court examining a claim for damages against one of them.  This does not constitute an express waiver of Norsafe's objection to personal jurisdiction in Florida.

Third, Plaintiffs are not parties to the contract and have provided no authority supporting their enforcement of the forum clause under these circumstances.  In addressing the converse situation -- when a forum selection clause may be enforced *against* a non-party -- the Eleventh Circuit has held that "the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (quoting *Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 209 (7th Cir.1993)).  In *Lipcon,* the Eleventh Circuit found that the interests of the plaintiffs' spouses were "completely derivative" of the plaintiffs' interests, where the spouses had signed letters of credit to provide collateral for the plaintiffs and the plaintiffs' liability was at issue.  Similarly, in *Hugel*, the Seventh Circuit

---

[6] At least two federal district courts in Florida have evaluated a forum selection clause as an independent basis for the exercise of personal jurisdiction in admiralty cases. *See Slaihem v. Sea Tow Bahamas Ltd.*, 148 F. Supp. 2d 1343, 1351 (S.D. Fla. 2001); *Barnett v. Carnival Corp.*, No. 06-cv-22521, 2007 WL 1526658, at *4 (S.D.Fla. May 23, 2007); *see also* Walter W. Heiser, *Forum Selection Clauses in Federal Courts: Limitations on Enforcement after Stewart and Carnival Cruise*, 45 Fla. L. Rev. 553, 583-84, n.5 (1993) (noting that international admiralty cases are a narrow subset of cases in which a court may apply federal common law such as *Bremen*).

determined that two corporations were subject to the forum selection clause where plaintiff, who was a party to the contract, owned 99% of the first corporation, which, in turn, owned 100% of the second corporation. *See also Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1319 (N.D. Ga. 2004) (a non-party may invoke the contract's forum selection clause where the non-party is an alter ego of the signatory).

Even if these precedents were applied to the situation at hand, there is no evidence that Plaintiffs' interests are derivative of or directly related to V. Ships' interests. Matthew Eisele, the corporate secretary for ARC, averred only that V. Ships preceded PGM as vessel manager, that AICC was the demise charterer of the Liberty, and that ARC was the time charterer. (Eisele Aff. ¶¶ 3, 4). There is no evidence that V. Ships and Plaintiffs were related financially, functionally, or otherwise. The "Fax Memo" attached to Eisele's Affidavit demonstrates only that V. Ships was acting only on behalf of the owners of the Liberty, Wallenius Wilhelmesen Lines, in purchasing the rescue boat from Norsafe, not on behalf of Plaintiffs. (Eisele Aff., Exh. 3).

Plaintiffs' reliance on the 1999 ship management agreement between V. Ships and the Plaintiffs is also unavailing. First, there is no evidence that the 1999 ship management agreement governed the Liberty, or any other vessel other than the vessel listed in Appendix A, the Faust. (Arralde Aff., Exh. A at 2). The relationship between Plaintiffs and V. Ships with respect to the Faust is not relevant to whether it was foreseeable that Norsafe would be subject to a forum selection clause in a contract involving the Liberty. Second, ARC's ability to accept and reject budgets prepared by V. Ships and V. Ships' duty to upkeep the Faust is not sufficient evidence of the type of close relationship required to justify the enforcement of a forum selection clause by a non-party. (Arralde Aff., Exh. A at 3). *See Slaihem v. Sea Tow Bahamas Ltd.*, 148 F. Supp. 2d 1343, 1348

13

(S.D.Fla. 2001) (finding plaintiff was not entitled to enforce clause against non-signatory defendant because he was merely a business associate to the signatory, where both defendants salvaged vessel).

As there is no evidence that V. Ships and ARC/AICC or PGM are closely related so that it would be forseeable that they would be subject to the forum selection clause, Plaintiffs are not entitled to enforce the forum selection clause against Norsafe.

### *Conclusion*

Based on the foregoing, the Court finds that Plaintiffs have failed to allege a basis for jurisdiction under the Florida long-arm statute or pursuant to the forum selection clause. Accordingly, it is **ORDERED AND ADJUDGED**:

1)      Third-Party Defendant Norsafe AS's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) (Dkt. 34) is **GRANTED**.

2)      The Third-Party Complaint is **DISMISSED**.

**DONE AND ORDERED** in chambers this _13th_ day of March, 2008.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

14